FILED

2011 APR 14 P 2: 53

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
ND OF CA, SAN JOSE

ADR

E-filing

Paid
$1

1  ROBBINS GELLER RUDMAN
   & DOWD LLP
2  RANDALL J. BARON (150796)
   A. RICK ATWOOD, JR. (156529)
3  DAVID T. WISSBROECKER (243867)
   EDWARD M. GERGOSIAN (105679)
4  655 West Broadway, Suite 1900
   San Diego, CA 92101
5  Telephone: 619/231-1058
   619/231-7423 (fax)
6  randyb@rgrdlaw.com
   ricka@rgrdlaw.com
7  dwissbroecker@rgrdlaw.com
   egergosian@rgrdlaw.com
8
   Attorneys for Plaintiff
9
   [Additional counsel appear on signature page.]
10
                    UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12
                          SAN JOSE DIVISION
13
   ALBERT STEIN, Individually and on Behalf  )  VIA FAX
14 of All Others Similarly Situated,         )  No. CV 11-01825
                                             )
15              Plaintiff,                   )
                                             )  CLASS ACTION
16      vs.                                  )
                                             )  COMPLAINT FOR BREACH OF
17 NATIONAL SEMICONDUCTOR                    )  FIDUCIARY DUTY AND AIDING AND
   CORPORATION, TEXAS INSTRUMENTS            )  ABETTING
18 INCORPORATED, DONALD MACLEOD,             )
   WILLIAM J. AMELIO, STEVEN R.              )
19 APPLETON, GARY P. ARNOLD, RICHARD         )
   J. DANZIG, ROBERT J. FRANKENBERG,         )
20 EDWARD R. McCRACKEN, RODERICK C.          )
   McGEARY and WILLIAM E. MITCHELL,          )
21                                           )
                Defendants.                  )
22                                           )  DEMAND FOR JURY TRIAL

BY FAX

Plaintiff, by his attorneys, alleges as follows:

## SUMMARY OF THE ACTION

1. This is a stockholder class action brought on behalf of the holders of National Semiconductor Corporation ("National Semiconductor" or the "Company") common stock against National Semiconductor and certain of the Company's officers and/or directors (the "Board") and Texas Instruments Incorporated ("TI") for breaches of fiduciary duty and/or other violations of state law arising out of defendants' efforts to complete the sale of the Company to TI pursuant to an unfair process and for an unfair price (the "Proposed Acquisition"). In pursuing the unlawful plan to sell National Semiconductor to TI, each of the defendants violated applicable law by directly breaching and/or aiding and abetting the other defendants' breaches of their fiduciary duties of loyalty, due care, candor, independence, good faith and fair dealing.

2. National Semiconductor designs, develops, manufactures and markets a wide range of semiconductor products, most of which are analog and mixed-signal integrated circuits. The Company provides high-performance energy-efficient analog and mixed-signal solutions, marketed under the PowerWise® brand. National Semiconductor's products include power management circuits and sub-systems, audio and operational amplifiers, communication interface products and data conversion solutions.

3. On April 4, 2011, TI and National Semiconductor announced they had signed a definitive agreement (the "Merger Agreement") under which TI will acquire National Semiconductor for $25 per share in an all-cash transaction of about $6.5 billion. National Semiconductor is an industry leader and TI hopes to acquire its highly valuable product base going forward, to the detriment of National Semiconductor's public shareholders. National Semiconductor brings to TI a portfolio of 12,000 analog products, a strong position with customers in the industrial power market, and excellent customer design tools. TI also will benefit from National Semiconductor's manufacturing operations, located in Maine, Scotland and Malaysia, which TI will continue to operate. Each site has additional capacity to increase production. TI has admitted that "National Semiconductor's management team has done an outstanding job of improving margins

and streamlining expenses, which upon close will increase TI's profitability and earnings per share, excluding transaction costs."

4. TI will gain significantly from the Proposed Acquisition. First, it gives TI a larger share of the analog market. Second, TI will gain a well-rounded and more profitable product portfolio, as the industrial market (mostly power management devices) accounts for almost half of National Semiconductor's revenue, and the addition of the industrial business to TI's portfolio will also improve profits, because industrial applications typically generate higher margins. Third, manufacturing capacity continues to be constrained in the semiconductor industry, and the Proposed Acquisition will give TI access to National Semiconductor's manufacturing operations and allow TI to increase production levels for in-demand products and to offer the industry's first 300mm analog capability. Fourth, cost synergies from the Proposed Acquisition are estimated to be about $100 million annualized. The Company's shareholders would have continued to reap these benefits, but for the Board's decision to enter into the Merger Agreement with TI.

5. National Semiconductor's officers and directors will receive special benefits from the Proposed Acquisition that the Company's other shareholders will not receive. Upon the closing of the merger, the directors and officers of National Semiconductor will enjoy accelerated and immediate vesting of stock options, restricted stock units, performance stock units, and Company restricted stock, which accelerated vesting is worth millions of dollars to the recipients. In addition, the Company's executive management will also receive millions of dollars in change-of-control payments when the Proposed Acquisition closes.

6. In the Merger Agreement, the Board members created a playing field that is tilted in favor of TI by agreeing to at least three provisions in derogation of their fiduciary duties to National Semiconductor's shareholders, including:

- a "No Shop" provision that requires National Semiconductor to discontinue any discussions with all other potential acquirers and forbids National Semiconductor from entering into new discussions, thus precluding the Board from engaging in a fair process to sell the Company by seeking out the best possible price for National Semiconductor's shareholders as their fiduciary duties require;

- a "Matching Rights" provision that requires National Semiconductor to give TI full information about competing acquisition proposals within 24 hours and then allows

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING - 2 -

        TI five days to match any competing proposal, thus discouraging competing proposals; and

- a "Termination Fee" provision whereby National Semiconductor agreed to pay TI a staggering $200,000,000 in the event National Semiconductor receives a higher offer for its shareholders, despite the no shop provision.

7.    Acting on their own self-interest, defendants utilized a defective sales process that was not designed to maximize shareholder value or protect the interests of National Semiconductor shareholders, but rather was designed to divert the Company's valuable assets to TI. Each of the defendants has breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or has aided and abetted such breaches. Rather than acting in the best interests of the Company's shareholders, defendants spent substantial effort tailoring the structural terms of the Proposed Acquisition to aggrandize their own personal interests and to meet the specific needs of TI, which efforts will eliminate the majority of the equity interest of National Semiconductor's shareholders.

8.    In essence, the Proposed Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of National Semiconductor and TI, on terms preferential to TI and defendants, and detrimental to plaintiff and National Semiconductor's shareholders. Plaintiff seeks to enjoin the Proposed Acquisition.

## INTRADISTRICT ASSIGNMENT

9.    A substantial part of the events or omissions which give rise to the claims in this action occurred in the county of Santa Clara, and as such this action is properly assigned to the San Jose division of this Court.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(1) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. The Court also has jurisdiction over this action pursuant to 15 U.S.C. §78bb(f)(3)(A)(i), because it is a class action based on the statutory or common law of Delaware, National Semiconductor's state of incorporation, and thus may be maintained in federal court. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING    - 3 -


11. Venue is proper in this District pursuant to 28 U.S.C. §1391 because defendant National Semiconductor has its principal place of business in this District. In addition, defendants Donald Macleod, Edward R. McCracken, Roderick C. McGeary and William E. Mitchell reside in this District. Plaintiff's claims arose in this District, where most of the actionable conduct took place, where most of the documents are electronically stored and where the evidence exists, and where virtually all the witnesses are located and available to testify at the jury trial permitted on these claims in Court. Moreover, each of the individual defendants, as Company officers and/or directors, has extensive contacts with this District.

**PARTIES**

12. Plaintiff Albert Stein is, and at all times relevant hereto was, a shareholder of National Semiconductor.

13. Defendant National Semiconductor is a Delaware corporation, headquartered in Santa Clara, California. National Semiconductor is sued as an aider and abettor herein.

14. Defendant TI is a Delaware corporation, headquartered in Dallas, Texas. TI is sued as an aider and abettor herein.

15. Defendant Donald Macleod is the Chairman, President and Chief Executive Officer of National Semiconductor and is a member of the Board.

16. Defendant William J. Amelio is a member of the Board.

17. Defendant Steven R. Appleton is a member of the Board.

18. Defendant Gary P. Arnold is a member of the Board.

19. Defendant Richard J. Danzig is a member of the Board.

20. Defendant Robert J. Frankenberg is a member of the Board.

21. Defendant Edward R. McCracken is a member of the Board.

22. Defendant Roderick C. McGeary is a member of the Board.

23. Defendant William E. Mitchell is a member of the Board.

24. The defendants named above in ¶¶15-23 are sometimes collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all holders of National Semiconductor stock who are being and will be harmed by defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

26. This action is properly maintainable as a class action.

27. The Class is so numerous that joinder of all members is impracticable. According to the Company's SEC filings, National Semiconductor had over 242 million shares issued and outstanding as of the close of business on February 27, 2011.

28. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a) whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(b) whether defendants are engaging in self-dealing in connection with the Proposed Acquisition;

(c) whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best value reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(d) whether defendants are unjustly enriching themselves and other insiders or affiliates of National Semiconductor and/or TI;

(e) whether the Individual Defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, candor and fair dealing;

(f) whether the defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets;

(g) whether the Proposed Acquisition compensation payable to plaintiff and the Class is unfair and inadequate; and

(h) whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

29. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

30. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

31. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

32. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

33. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE PROPOSED ACQUISITION

34. On April 4, 2011, TI, National Semiconductor, and Orion Merger Corp., a wholly owned subsidiary of TI, entered into the Merger Agreement pursuant to which TI will acquire National Semiconductor, and will operate it as a wholly owned subsidiary of TI, for a mere $25 per share in cash. The joint press release stated in pertinent part:

**TI to acquire National Semiconductor**

**Complementary portfolios are foundation for growth**

... Texas Instruments Incorporated and National Semiconductor today announced they have signed a definitive agreement under which TI will acquire National for $25 per share in an all-cash transaction of about $6.5 billion. The acquisition combines two industry leaders in analog semiconductors, each with unique strengths in delivering products to improve performance and efficiency and

convert real-world signals in electronic systems. The boards of directors of both companies have unanimously approved the transaction.

"This acquisition is about strength and growth," said Rich Templeton, TI's chairman, president and chief executive officer. "National has an excellent development team, and its products combined with our own can offer customers an analog portfolio of unmatched depth and breadth. In recent years, National's management team has done an outstanding job of improving margins and streamlining expenses, which upon close will increase TI's profitability and earnings per share, excluding transaction costs. Our ability to accelerate National's growth with our much larger sales force is the foundation of our belief that we can produce strong returns on our investment. The combined sales team will be 10 times larger than National's is today, and the portfolio will be exposed to more customers in more markets."

"Our two companies complement each other very well," said Don Macleod, National's chief executive officer. "TI has much greater scale in the marketplace, with its larger portfolio of products and its large global sales force. This provides a platform to enhance National's strong and highly profitable analog capability, power management in particular, leading to meaningful growth."

Each company has unique strengths. Among them are the breadth of TI's 30,000 analog products, extensive customer reach, and industry-leading manufacturing including the world's first 300-millimeter analog factory. National brings a portfolio of 12,000 analog products, a strong position with customers in the industrial power market, and excellent customer design tools. Upon close of the transaction, National becomes part of TI's analog segment, and sales of analog semiconductors will represent almost 50 percent of TI's revenue.

The combined company also will benefit from National's manufacturing operations, located in Maine, Scotland and Malaysia, which TI will continue to operate. Each site has additional capacity to increase production. National's headquarters will remain in Santa Clara, California.

Under terms of the agreement, National stockholders will receive $25 in cash for each share of National common stock they hold at the time of closing. TI expects to fund the transaction with a combination of existing cash balances and debt. The acquisition is subject to customary closing conditions, including review by U.S. and international regulators and approval by National's shareholders. The transaction is expected to close in six to nine months.

The market for analog semiconductors was $42 billion in 2010. TI is the market leader with 2010 analog revenue of $6.0 billion, or 14 percent of the market. National's revenue in calendar year 2010 was about $1.6 billion, or 3 percent of the market.

35. National Semiconductor designs, develops, manufactures and markets a wide range of semiconductor products, most of which are analog and mixed-signal integrated circuits. The Company provides high-performance energy-efficient analog and mixed-signal solutions, marketed under the PowerWise® brand. National Semiconductor's products include power management

circuits and sub-systems, audio and operational amplifiers, communication interface products and data conversion solutions.

36.  National Semiconductor is an industry leader and TI hopes to acquire its highly valuable product base going forward, to the detriment of National Semiconductor's public shareholders. National Semiconductor brings to TI a portfolio of 12,000 analog products, a strong position with customers in the industrial power market, and excellent customer design tools. TI also will benefit from National Semiconductor's manufacturing operations, located in Maine, Scotland and Malaysia, which TI will continue to operate. Each site has additional capacity to increase production. TI has admitted that "National Semiconductor's management team has done an outstanding job of improving margins and streamlining expenses, which upon close will increase TI's profitability and earnings per share, excluding transaction costs."

37.  TI will gain significantly from the Proposed Acquisition. First, it gives TI a larger share of the analog market. Second, TI will gain a well-rounded and more profitable product portfolio, as the industrial market (mostly power management devices) accounts for almost half of National Semiconductor's revenue, and the addition of the industrial business to TI's portfolio will also improve profits, because industrial applications typically generate higher margins. Third, manufacturing capacity continues to be constrained in the semiconductor industry, and the Proposed Acquisition will give TI access to National Semiconductor's manufacturing operations and allow TI to increase production levels for in-demand products and to offer the industry's first 300mm analog capability. Fourth, cost synergies from the Proposed Acquisition are estimated to be about $100 million annualized. The Company's shareholders would have continued to reap these benefits, but for the Board's decision to enter into the Merger Agreement with TI.

38.  National Semiconductor's officers and directors will receive special benefits from the Proposed Acquisition that the Company's other shareholders will not receive. Upon the closing of the merger, the directors and officers of National Semiconductor will enjoy accelerated and immediate vesting of stock options, restricted stock units, performance stock units, and Company restricted stock, which accelerated vesting is worth millions of dollars to the recipients. In addition,

the Company's executive management will also receive millions of dollars in change-of-control payments when the Proposed Acquisition closes.

39. In the Merger Agreement, the Board created a playing field that is tilted in favor of TI by agreeing to at least three provisions in derogation of their fiduciary duties to National Semiconductor's shareholders, including:

- a "No Shop" provision that requires National Semiconductor to discontinue any discussions with all other potential acquirers and forbids National Semiconductor from entering into new discussions, thus precluding the Board from engaging in a fair process to sell the Company by seeking out the best possible price for National Semiconductor's shareholders as their fiduciary duties require;

- a "Matching Rights" provision that requires National Semiconductor to give TI full information about competing acquisition proposals within 24 hours and then allows TI five days to match any competing proposal, thus discouraging competing proposals; and

- a "Termination Fee" provision whereby National Semiconductor agreed to pay TI a staggering $200,000,000 in the event National Semiconductor receives a higher offer for its shareholders, despite the no shop provision.

40. Acting on their own self-interest, defendants utilized a defective sales process that was not designed to maximize shareholder value or protect the interests of National Semiconductor shareholders, but rather was designed to divert the Company's valuable assets to TI. Each of the defendants has breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or has aided and abetted such breaches. Rather than acting in the best interests of the Company's shareholders, defendants spent substantial effort tailoring the structural terms of the Proposed Acquisition to aggrandize their own personal interests and to meet the specific needs of TI, which efforts will eliminate the majority of the equity interest of National Semiconductor's shareholders.

41. In essence, the Proposed Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of National Semiconductor and TI, on terms preferential to TI and defendants, and detrimental to plaintiff and National Semiconductor's shareholders. Plaintiff seeks to enjoin the Proposed Acquisition.

## DEFENDANTS' FIDUCIARY DUTIES

42. In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either (i) a change in corporate control or (ii) a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with these duties, the directors may not take any action that:

    (a) adversely affects the value provided to the corporation's shareholders;

    (b) will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

    (c) contractually prohibits them from complying with their fiduciary duties;

    (d) will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

    (e) will provide the directors with preferential treatment at the expense of, or separate from, the public shareholders.

43. In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of National Semiconductor, are obligated to refrain from:

    (a) participating in any transaction where the directors' or officers' loyalties are divided;

    (b) participating in any transaction where the directors or officers receive or are entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

    (c) unjustly enriching themselves at the expense or to the detriment of the public shareholders.

44. Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Acquisition, violated the fiduciary duties owed to plaintiff and the other public shareholders of National Semiconductor, including their duties of loyalty, good faith, candor, due care and independence, insofar as they stood on both sides of the transaction and

engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by plaintiff or the Class. As a result of the Individual Defendants' self-dealing and divided loyalties, neither plaintiff nor the Class will receive adequate or fair value for their National Semiconductor common stock in the Proposed Acquisition.

45. Because the Individual Defendants have breached their duties of due care, loyalty and good faith in connection with the Proposed Acquisition, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price and terms, is placed upon the Individual Defendants as a matter of law.

## COUNT I

### Claim for Breach of Fiduciary Duties and Aiding and Abetting Against All Defendants

46. Plaintiff repeats and realleges each allegation set forth herein.

47. The Individual Defendants, aided and abetted by the Company and TI, have violated their fiduciary duties of care, loyalty, candor, good faith and independence owed to the public shareholders of National Semiconductor and have acted to put their personal interests ahead of the interests of National Semiconductor's shareholders.

48. By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value of their investment in National Semiconductor.

49. The Individual Defendants have violated their fiduciary duties by entering into the Proposed Acquisition without regard to the fairness of the transaction to National Semiconductor's shareholders. National Semiconductor and TI aided and abetted the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the other holders of National Semiconductor stock.

50. As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of National Semiconductor because, among other reasons, they failed to ensure a fair process and maximization of shareholder value.

51. Because the Individual Defendants dominate and control the business and corporate affairs of National Semiconductor, and are in possession of private corporate information concerning National Semiconductor's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of National Semiconductor which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

52. By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

53. As a result of the actions of defendants, plaintiff and the Class have been and will be irreparably harmed.

54. Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Acquisition's terms, and will not supply to National Semiconductor's shareholders sufficient information to enable them to make informed decisions in connection with the Proposed Acquisition, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

55. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in plaintiff's favor and in favor of the Class and against defendants, as follows:

A. Declaring that this action is properly maintainable as a class action;

B. Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of the defendants and is therefore unlawful and unenforceable;

C. Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain the highest possible value for shareholders;

D. Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of National Semiconductor's shareholders and to refrain from entering into any transaction until the process for the sale or merger of the Company is completed and the highest possible value is obtained;

E. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

F. Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G. Granting such other further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: April 14, 2011

ROBBINS GELLER RUDMAN
& DOWD LLP
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
EDWARD M. GERGOSIAN

*/s/ Edward Gergosian*
EDWARD M. GERGOSIAN

55 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LAW OFFICES OF MARC S. HENZEL
MARC S. HENZEL
431 Montgomery Avenue, Suite B
Merion Station, PA 19066
Telephone: 610/660-8000
610/660-8080 (fax)

Attorneys for Plaintiff

S:\CptDraft\Deal\Cpt National Semi_Fed.doc